**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IMPORT GLOBAL, LLC,

      **Plaintiff,**

         **v.**

PRODUCT SAFETY INSIGHTS LLC
and
DONALD L. MAYS

      **Defendants.**

Case No.

## COMPLAINT AND PRELIMINARY INJUNCTION

Import Global, LLC ("Import Global") for its Complaint against Product Insights LLC ("Product Insights") and Donald L. Mays ("Mays") alleges:

## NATURE OF THE ACTION

1. This is a civil action to enjoin and remedy defamation by Product Insights and Mays against Import Global.

2. Plaintiff Import Global, LLC is a company organized in the State of Florida and selling products on Amazon, and retail stores such as Home Depot.

3. Defendant Product Safety Insights LLC, upon information and belief, is a company organized in Connecticut and on information and belief, is a paid consulting firm, residing at:

Product Safety Insights LLC

580 Hunting Ridge Road

Stamford, CT 06903

4.    Defendant Donald L. Mays, upon information and belief, is a paid consultant operating at least in part through Product Safety Insights LLC and on information and belief, residing at:

    Donald L. Mays

    580 Hunting Ridge Road

    Stamford CT 06903.

5.    Upon information and belief, Product Safety Insights and/or Mays was engaged by an unidentified company to write a defaming letter to Home Depot with false information to interfere with the business relationship between Import Global and Home Depot, and economically harm Import Global.

6.    As a result of the defaming letter written by Product Safety Insights and/or Mays, Import Global has lost more than seventy-five thousand dollars ($75,000) of business from Home Depot.

**JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction based on diversity of the locations of Import Global, and both Product Safety and Mays along with the damages of more than $75,000.

8.    This Court has personal jurisdiction over both Product Safety and Mays because, on information and belief, both Product Safety and Mays reside in this district.

9.    Venue is proper in this Court under 28, U.S.C. § 1391(b)(1) because on information and belief, both Product Safety and Mays reside in this district.

**FACTS**

10. Import Global had a business relationship with Home Depot and was selling an outlet cover sold under the name "Neat Socket" which includes an extension with electrical outlets.

11. The Neat Socket was well received by the consumers and was generating sales of more than $6,000 per month at Home Depot.

12. Suddenly, Product Safety/Mays wrote the letter in Ex. A to Home Depot asserting intentionally damaging misrepresentations to undermine Import Global's product, Neat Socket.

13. Ex. A, p. 1, first sentence indicates that Product Safety/Mays was acting on behalf of a client, and not performing an act of a "concerned party". That is, Product Safety/Mays wrote the 3-page letter in Ex. A for money.

14. Page 2, first paragraph of the letter acknowledges that the consumer purchasing the Neat Socket is cautioned on the cover of the Neat Socket that the maximum current for the Neat Socket is "13 maximum amps".

15. Page 2, third paragraph has an admission by the Product Safety/Mays that no tests were performed to enable the unsolicited recommendation to Home Depot that the Neat Socket is unsafe and that Neat Socket "presents a substantial product hazard". See Ex. A, p. 3, penultimate paragraph.

16. The theoretical example given in the letter at p. 2, penultimate paragraph is that if a toaster, a hair dryer, and some unidentified high amperage appliance were plugged

into the outlets, then the Neat Socket could melt down, cause a short circuit, and a fire.

17. The theoretical example identifies three serious errors: 1) As a consultant, it is shocking to see that despite great thought into defaming Import Global, Product Safety/Mays was unable to think of three high amperage appliances.  As long as the consultant was endeavoring to create unrealistic scenarios, he could have simplified his story telling by saying there are three toasters plugged in, or three hair dryers, 2) Every home and work place is required by law to have circuit breakers/fuses to protect against electrical fires such as the ridiculous scenario asserted by the letter in Ex. A, and 3) the letter fails to explain the motivation of a user to ignore the stated current limitation of 13 maximum amps on the cover of the Neat Socket, or the fact that every home and work place, on information and belief,  typically has wiring protected with circuit breakers/fuses.

18. In summary, it appears that Product Safety/Mays was paid to defame Import Global and its Neat Socket, and sadly, Product Safety/Mays succeeded:

   a. Product Safety/Mays wrote to Home Depot asserting that Import Global's Neat Socket is unsafe without Product Safety/Mays performing any testing and with a theoretical example that fails to account for critical relevant actual information that the consumer is cautioned by Neat Socket as to the limitation of electrical current, and that homes and businesses are required by law to have circuit breakers/fuses to protect against circuit overloads;

   b. Product Safety/Mays intentional communicated its negative comments about the Neat Socket without any testing and with unrealistic theoretical examples;

c.  Product Safety/Mays intentional wrote to Home Depot to defame Import Global and its Neat Socket, and to harm Import Global; and

d.  Import Global has suffered a serious financial loss due to Product Safety/Mays, and will continue to have financial losses from the defaming letter sent by Product Safety/Mays.

## COUNT I
### Defamation

19. Plaintiff reasserts and incorporates all prior paragraphs as though fully stated herein.

20. Product Safety wrote to  Home Depot with false statements as to the safety of Import Global's product, Neat Socket.

21. Product Safety knew, or should have known that its basis for its letter shown on Ex. A was not based on a scientific analysis or any reasonable analysis.

22. Product Safety caused Import Global financial losses due to the letter shown in Ex. A.

23. Upon information and belief, Safety Product was paid to write a defaming letter to Home Depot about Import Global and its product Neat Socket.

## COUNT II
### Defamation

24. Plaintiff reasserts and incorporates all prior paragraphs as though fully stated herein.

25. Mays wrote to  Home Depot with false statements as to the safety of Import Global's product, Neat Socket.

26. Mays knew, or should have known that its basis for its letter shown on Ex. A was not based on a scientific analysis or any reasonable analysis.

27. Mays caused Import Global financial losses due to the letter shown in Ex. A.

28. Upon information and belief, Mays was paid to write a defaming letter to Home Depot about Import Global and its product Neat Socket.

**REQUEST FOR RELIEF**

WHEREFORE, Import Global asks this Court to:

a. Grant a preliminary and permanent injunction to enjoin Safety Product from making defaming statements against Import Global and its products.

b. Grant a preliminary and permanent injunction to enjoin Mays from making defaming statements against Import Global and its products.

c. Award Import Global attorney fees and costs.

d. Award Import Global lost profits from lost sales due to Safety Product.

e. Award Import Global lost profits from lost sales due to Mays.

f. Award Import Global such other and further relief as may be just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Import Global requests a trial by jury.

Date: September 9, 2024

Respectfully submitted,

/s/ *David Fink*
David Fink
Conn Bar: 14059
7519 Apache Plume
Houston, TX 77071
Tele: 713-591-4448
Texascowboy6@gmail.com